UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLET EMERSON PROULX,<br><br>            Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>            Defendant. | Case No.:  18cv1755 JAH-BGS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br>**[Doc. Nos. 11, 14]** |

**INTRODUCTION**

Plaintiff seeks review of the Social Security Commissioner's final decision denying benefits.  After a thorough review of the parties' submissions and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment.

//

//

---

[1]  Dr. Kilolo Kijakazi is named in place of Nancy A. Berryhill as Commissioner of Social Security Administration pursuant to FED.R CIV.P. 25(d)

1

# BACKGROUND

Plaintiff was born on June 4, 1985 and was 32 years of age at the time of the hearing before the Administrative Law Judge ("ALJ"). AR[2] at 29. She alleged a disability onset of February 21, 2017. *Id*. at 18. She filed an application for a period of disability and disability insurance benefits on March 22, 2015, and an application for supplement security income on March 22, 2017. *Id*. at 18, 87, 88. The Commissioner denied the claims on June 9, 2017 and denied the claims again upon reconsideration. *Id*. at 87-147. Plaintiff requested a hearing and testified at the hearing on December 1, 2017. *Id*. at 18, 148. The ALJ issued an unfavorable decision on January 31, 2018. *Id*. at 15. Plaintiff filed a request for review of the ALJ's decision and the Appeals Council denied the request. *Id*. at 1, 3.

Plaintiff, appearing through counsel, filed a complaint seeking review of the Commissioner's final decision denying benefits on July 30, 2018. *See* Doc. No. 1. Defendant filed an answer and the administrative record on November 16, 2018. *See* Doc. Nos. 9, 10. Thereafter, Plaintiff filed the pending motion for summary judgment and Defendant filed an opposition and cross-motion for summary judgment. *See* Doc. Nos. 11, 14, 15. Plaintiff filed a reply. *See* Doc. No. 16.

# DISCUSSION

**I. Legal Standards**

**A. Qualifying for Disability Benefits**

To qualify for disability benefits under the Act, an applicant must show that: (1) he suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the applicant incapable of performing the work that he previously performed or any other substantially gainful employment that exists in

---

[2] AR refers to the administrative record.

the national economy. *See* 42 U.S.C. § 423(d)(1)(A), 2(A). An applicant must meet both requirements to be "disabled." *Id*.

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404 Appendix 1 to Subpart P. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If a condition "falls short of the [listing] criterion" a multiple factor analysis is appropriate. *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003). Of such analysis, "the Secretary shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id*. at 1182 (quoting 42 U.S.C. § 423(d)(2)(B)). If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant cannot perform his previous work, the fifth and final step of the process determines whether he is able to perform other work in the national economy considering his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

//
//

**B. Judicial Review of an ALJ's Decision**

Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited. The Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988) (citing *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (citing *Allen v. Secretary of Health and Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984)). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

However, even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a decision. *See Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administrator for further proceedings. *Id*. "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."

*Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)).

**II. The ALJ's Decision**

In the present case, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 21, 2017 and has severe impairments, including Anxiety Disorder, NOS, Mood Disorder with Depression, NOS, Borderline Personality Disorder, Post-Traumatic Stress Disorder and Asthma. AR at 20. The ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or are medically equal in severity to one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1. *Id*. at 21.

The ALJ found Plaintiff has a residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours of an 8-hour workday; sit for 6 hours of an 8-hour workday; must avoid dust, odors, fumes, and pulmonary irritants; can have no more than occasional social contact with co-workers or supervisors; can have no in-person social contact with members of the public; and can perform simple, routine tasks.

*Id*. at 23. Additionally, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were inconsistent with the medical evidence. *Id*. at 26.

The ALJ gave some weight to the opinion of treating doctor Seda Gragossian, Ph.D, some weight to the opinion of treating doctor, Lina Schein, M.D., significant weight to the opinion of the examining doctor, Gregory Nicholson, M.D., some weight to the opinions of the State agency psychiatric consultants, N. Haroun, M.D. and Dan Funkenstein, M.D. and substantial weight to the opinions of the State agency physical consultants L. Naiman, M.D. and M. Gleason, M.D. *Id*. at 26, 27, 28.

The ALJ determined Plaintiff was unable to perform her past relevant work but there are jobs in the national economy in significant numbers that she can perform. *Id*. 28, 29.

1  Ultimately, the ALJ concluded Plaintiff has not been under a disability as defined by the
2  Act from February 21, 2017.  *Id.* at 30.

### III.  Analysis

Plaintiff argues the ALJ failed to properly evaluate the opinions of the treating psychologist, Dr. Gragossian and the opinion of the consultative examiner, Dr. Nicholson. "[A]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Where a treating doctor's or examining doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).  Even if the treating or examining doctor's opinion is contradicted by another doctor, the ALJ may not reject the opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).  The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).  "The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

### A.  Dr. Gragossian, Treating Psychologist

Plaintiff contends the ALJ was critical of Dr. Gragossian's opinion indicating Plaintiff must not return to work until she is fit for employment in a letter dated May 1,

2017 because it was made only two and a half months after the onset of the disability. However, Plaintiff argues, Dr. Gragossian affirmed the disability in a series of subsequent letters and attested to Plaintiff's disability more than eight months after the onset.

She also argues the ALJ committed reversible error by ignoring the subsequent series of letters from Dr. Gragossian in which Dr. Gragossian essentially opines that Plaintiff suffers marked limitations in the work categories of performing day-to-day activities on a sustained basis and responding appropriately to usual work situations and to changes in a routine work setting. Plaintiff argues the ALJ's articulated reason for rejecting those opinions, that Dr. Gragossian did not provide a full residual functional capacity assessment lacks merit because the Commissioner's adjudicative guidelines instruct that a doctor's opinion that provides an opinion that encroaches on the Commissioner's obligation regarding a legal determination rather than a medical source statement must be considered in the disability analysis because it sheds important light on a claimant's functioning capabilities. Plaintiff maintains the ALJ should have made slight translations or modifications to Dr. Gragossian's opinions so that they fit more directly into the Social Security disability scheme.

Defendant argues the ALJ properly considered and weighed the opinions of Dr. Gragossian. Specifically, Defendant contends the ALJ found the May 1, 2017 opinion probative but, given that the date of the opinion was only two months after the onset of her disability, found it was not persuasive evidence that Plaintiff met the definition of disability. Although subsequent letters from Dr. Gragossian did not include the claim that she should not return to work, Defendant contends, the ALJ found Plaintiff had severe impairments that were expected to last 12 consecutive months and ultimately agreed with Dr. Gragossian that Plaintiff could not return to her past job.

Defendant also contends the ALJ considered Dr. Gragossian's series of letters following the May opinion letter. Defendant argues the series of letters did not contain specific language that directly affirmed the previous assessment contained in the May letter. Defendant maintains, the series of letters did not state Plaintiff could not return to

work or that she was not fit for employment. Additionally, Defendant contends the letters did not provide full residual functional capacity assessments and argues it was, therefore, appropriate for the ALJ to give "some" weight to Dr. Gragossian's opinions. The ALJ agreed with Dr. Gragossian that Plaintiff's impairments interfered with her ability to work. Defendant maintains the ALJ found Plaintiff had severe impairments and Plaintiff's RFC included limitations that accommodated Plaintiff's impairments and any limitations set forth in Dr. Gragossian's opinions as well as the objective evidence, opinion evidence and treatment records.

In the written decision, the ALJ gave some weight to Dr. Gragossian's opinions and references the May 1, 2017 and June 14, 2017 letters. The ALJ found Dr. Gragossian's May 1, 2017 opinion that Plaintiff was "not to return to work until she is fit for employment" probative but not persuasive because it was given only two months after onset of her disability and, under the Social Security regulations, a claimant must suffer from a physical or mental impairment which can be expected to last not less than 12 months. AR 26-27. The ALJ further found Dr. Gragossian's opinion was only entitled to some weight because it did not provide a full residual functional capacity assessment. *Id*. at 27.

The ALJ provided a summary of the facts and evidence and an interpretation of the evidence to support the findings and indicates he reviewed the entire record, including the medical records from Dr. Gragossian. *Id*. at 20, 23. The ALJ specifically discusses the May 1, 2017 letter and rejects the opinion that Plaintiff is unfit to return to work because it was provided a short time after the onset of disability. The ALJ also mentions the June 14, 2017 letter but does not discuss any specifics about the letter. *Id*. at 26. The June letter and the August 2, 2017 letter both state that Plaintiff "continues to experience symptoms of Depression, Anxiety, interpersonal problems, and Post Traumatic Stress Disorder (PTSD) which interfere with her ability to work…" and recommend Plaintiff continue with treatment to gain tools "to contain herself emotionally and work with others." *Id*. at 406, 409. While the letters do not explicitly state Plaintiff is unfit to return to work, they indicate

Plaintiff continues to suffer from the same problems that were "barriers to her returning to work" in the May letter. *Id*. at 329. The clear inference from the language of the June and August letters is that Plaintiff remains unfit for work because she has not gained the "skills and tools to contain herself emotionally and work well with others." *Id*. at 406, 409. The October 20, 2017 letter includes information that Plaintiff's symptoms persist and that she was referred for additional therapy. *Id*. at 479. The ALJ fails to address the August and October letters and Dr. Gragossian's opinion contained therein that Plaintiff's disabling symptoms were persisting. This casts doubt on the legitimacy of the ALJ's reason for rejecting Dr. Gragossian's opinion that Plaintiff is unfit to return to work.

Additionally, in the October letter, Dr. Gragossian explained Plaintiff was in intensive individualized therapy and that she continued to struggle with "sleep disturbance, difficulty concentrating, disassociating, lack of appetite, mental and physical fatigue, feelings of helplessness and extreme fear that lead to reactivity." *Id*. Mental disorders that seriously limit an individual's ability to function independently, appropriately, effectively equates to a marked limitation. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00.F.2.D. As such, the Court agrees, Dr. Gragossian essentially opines that Plaintiff suffers from marked limitations in the work categories of performing day-to-day activities on a sustained basis and responding appropriately to usual work situations. Although the ALJ explained he rejected Dr. Gragossian's opinion because she did not provide a full residual functional capacity assessment, it is the ALJ's responsibility to translate clinical findings into an RFC. *Rounds v. Commissioner Social Sec. Admin.*, 807 (F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). Accordingly, the ALJ fails to provide specific and legitimate reasons for not crediting Dr. Gragossian's opinion.

Plaintiff asks the Court to exercise its discretion to credit the opinion as true and reverse and award benefits. The credit-as-true doctrine is appropriate only when "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence; and (3) if the improperly discredited evidence were credited as true, the ALJ

would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even if all conditions are met, a court should remand if the "record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id*. at 1021.

As discussed above, the ALJ failed to provide sufficient reasons for rejecting Dr. Gragossian's opinion that Plaintiff is unfit for work and the severity of Plaintiff's limitations. The record has been fully developed. In addition to the detailed record which included numerous doctors' opinions and treatment notes, the ALJ questioned the vocational expert about several hypothetical "vocational profiles." AR at 79.

Crediting Dr. Gragossian's opinion that Plaintiff's depression, anxiety, interpersonal problems and PTSD interfere with her ability to work or engage in day-to-day activities would entitle Plaintiff to benefits. However, looking to the record as a whole, there is doubt as to whether Plaintiff is, in fact, disabled. Specifically, Dr. Nicholson opines that Plaintiff's condition was expected to improve with active treatment and that Plaintiff suffers only mild or moderate limitations in her functional assessment. This contradicts Dr. Gragossian's marked limitation opinion. Remand is appropriate to allow the ALJ to properly address and weigh the differing physician's opinions.

**B.  Dr. Nicholson, Examining Psychiatrist**

Plaintiff argues the ALJ failed to properly evaluate the consultative examiner's opinion. She maintains the ALJ states he gave significant weight to Dr. Nicholson's opinions but failed to pose all the limitations identified by Dr. Nicholson when presenting hypotheticals to the vocational expert. Specifically, she argues, the ALJ's RFC does not take into account Dr. Nicholson's opinion that she suffers from moderate limitations in the ability to "perform work activities without special or additional supervision" and moderate limitations in the ability to "respond appropriately to usual work situations and to changes in a routine work setting".

Defendant contends the ALJ properly considered Dr. Nicholson's medical opinion. Defendant argues it was unnecessary for the ALJ to pose the specific limitations when adducing testimony from the vocational expert because the ALJ is required to review the

evidence and translate the limitations into work related functions. Defendant maintains the ALJ synthesized the evidence consistent with the medical opinions into a functional capacity that reflected the valid limitations stemming from Plaintiff's medical conditions.

In the written decision, the ALJ gave significant weight to Dr. Nicholson's opinion and found his residual functional capacity assessment reasonable. AR at 27. The ALJ determined Dr. Nicholson "assessed functional limitations that are essentially the same as those included" in the ALJ's RFC. *Id*. Dr. Nicholson opined that

> 1. [Plaintiff] is able to understand, remember, and carry out simple one or two-step job instructions.
> 2. [Plaintiff] is able to do detailed and complex instructions.
> 3. [Plaintiff's] ability to relate and interact with coworkers and the public is moderately limited.
> 4. [Plaintiff's] ability to maintain concentration and attention, persistence and pace is moderately limited.
> 5. [Plaintiff's] ability to accept instructions from supervisors is mildly limited.
> 6. [Plaintiff's] ability to maintain regular attendance in the work place and perform work activities on a consistent basis is mildly limited.
> 7. [Plaintiff's] ability to perform work activities without special or additional supervision is moderately limited.

AR at 513. He also opined, that based on her mental status exam demonstrating cognitive deficits, Plaintiff has mild limitations understanding and remembering complex instructions, carrying out complex instructions and the ability to make judgments on complex work-related decisions. *Id*. at 515. Additionally, he determined Plaintiff's "symptoms of depression, anxiety, and derealization may interfere with interpersonal interactions" and support moderate limitations in interacting appropriately with the public, with her supervisor and co-workers, and responding appropriately to usual work situations and to changes in a routine setting. *Id*. at 516.

Defendant suggests the RFC's limitation to simple routine tasks, no more than occasional contact with supervisors and coworkers and no in-person contact with the public addresses Plaintiff's limitations in her ability to "perform work activities without special or additional supervision" and moderate limitations in the ability to "respond appropriately to usual work situations and to changes in a routine work setting". Although case law in

this circuit is split as to what limitations are addressed by an RFC that includes a restriction to "simple repetitive tasks", most courts "favor the view that a restriction to simple/routine tasks is not a catchall." *de Los Santos v. Kijakazi*, 2022 WL 1541464 (E.D. Cal. May 16, 2022) (listing district court cases addressing whether a limitation to simple, repetitive tasks encompass certain moderate limitations).

      The Court finds the RFC's restrictions of simple routine tasks, no more than occasional contact with supervisors and coworkers and no in-person contact with the public do not provide for Plaintiff's moderate limitations in the ability to "perform work activities without special or additional supervision". *See Donna M. v. Saul*, 2020 WL 6415601, at *4 (N.D. Cal. Nov. 2, 2020) (Finding limitation to simple, routine tasks with no public interaction in RFC did not address other moderate limitations, including the plaintiff's ability to relate to and interact with coworkers, associate with day-to-day work activity, maintain regular attendance in the workplace, and perform work activities on a consistent basis without special or additional supervision.); *Lisardo S. v. Berryhill*, 2019 WL 773686 at *5 (C.D. Cal. February 20, 2019) (Finding the ALJ's RFC restricting the plaintiff to simple work, limited contact with the public and a predictable work routine with no more than simple decision making did not accommodate the plaintiff's moderately limited ability to perform work without special or additional supervision.). Furthermore, limitations to simple routine tasks, no contact with the public and occasional contact with coworkers or supervisors is distinct from the ability to respond appropriately to usual work situations and changes in a routine work setting. *See Bagby v. Comm'r of Soc. Sec.*, 606 Fed.Appx. 888, 890 (9th Cir. 2015). Accordingly, the ALJ erred by failing to set forth specific and legitimate reasons for rejecting Dr. Nicholson's opinions as to Plaintiff's moderate limitations. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995)).

## CONCLUSION AND ORDER

Based on the foregoing, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion for summary judgment (Doc. No. 11) is **GRANTED**. The matter is **REMANDED** for further proceedings.
2. Defendant's cross-motion for summary judgment (Doc. No. 14) is **DENIED**.
3. The Clerk of Court shall enter judgment accordingly.

DATED:   September 5, 2023

_____
JOHN A. HOUSTON
United States District Judge